# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARK DION,<br>      Plaintiff,<br><br>      v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security<br>Administration,<br><br>      Defendant. | CIVIL ACTION<br>NO. 17-40171-TSH |

**MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO FOR JUDGMENT ON THE PLEADINGS (Docket No. 16) AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (Docket No. 18)**
**March 31, 2021**

HILLMAN, District Judge.

      This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "SSA") by the claimant ("Plaintiff") for Social Security Disability Insurance Benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). An Administrative Law Judge (ALJ) found that Plaintiff was not disabled from December 11, 2007, his alleged onset date, through September 19, 2016, the date of the decision, because he was capable of performing a significant number of unskilled sedentary jobs that would accommodate his shoulder pain, diabetes and neuropathy. Plaintiff filed a motion for judgment on the pleadings of the Commissioner (Docket No 16) and the Commissioner filed a cross-motion seeking an order affirming the decision of the Commissioner (Docket No. 18). For the reasons set forth below,

---

[1] Andrew Saul became Commissioner of the Social Security Administration on June 17, 2019. *See* Fed. R. Civ. P. 25(d).

Defendant's motion is **_granted_** and Plaintiff's motion is **_denied_**.

### Discussion[2]

The parties are familiar with the factual history of this case and the applicable five-step sequential analysis. Accordingly, the court will review the procedural and substantive history of the case as it relates to the arguments set forth by the Plaintiff.

Plaintiff was born in 1969 and was 38 years old at the onset of his disability. He has a high school education and past work as a cook and chef. Plaintiff experiences a number of physical impairments, including type 2 diabetes with neuropathy, and pain in his shoulders and knees.

Plaintiff filed applications for DIB and SSI in December 2013 claiming an inability to work since December 11, 2007 (AR. 25, 585-602). The applications were denied (AR. 502-507, 510-515) and a hearing was held before an Administrative Law Judge ("ALJ") on August 19, 2016 (AR. 51-89). On September 19, 2016, the ALJ issued a decision finding that Plaintiff was not disabled (AR. 22-37). On August 22, 2017, the Appeals Council denied Plaintiff's request for review (AR. 5-11) making the ALJ's decision the final decision of the Commissioner. Plaintiff has exhausted his administrative remedies, and this case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

### *The ALJ's Findings*

At step one the ALJ found that the Plaintiff had not engaged in substantial gainful activity since December 11, 2007, his alleged onset date (AR. 27). At step two, the ALJ found that Plaintiff suffered from the severe impairments of osteoarthritis, diabetes mellitus, diabetic

---

[2] A transcript of the Social Security Administration Official Record (*"AR."*) has been filed with the court under seal. (Docket No. 14). Citations to the AR page numbers are those assigned by the agency and appear on the lower right hand corner of each page.

neuropathy, shoulder tendinitis, obstructive sleep apnea, and plantar fasciitis (AR. 27). At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing (AR. 33). The ALJ went on to find that Plaintiff retained the residual functional capacity ("RFC") to perform light work,[3] as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he needed to be able to alternate standing for five minutes for every 30 minutes of sitting, and sitting for five minutes for every 30 minutes of standing or walking. The ALJ also found that he could only engage in occasional overhead reaching with his right upper extremity (right hand dominant); he could frequently climb ramps and stairs but could never climb ladders, ropes, or scaffolds; could frequently balance, stoop, kneel, crouch, and crawl; and could "occasionally require[e] the ability to respond appropriately to the public" (AR. 34). At step four, the ALJ found that Plaintiff could not perform his past relevant work (AR. 35). The ALJ concluded at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy as a sorter, inspector or packager (AR. 36-37). Accordingly, the ALJ found that Plaintiff was not disabled (AR. 37).

## Standard of Review

This Court may not disturb the Commissioner's decision if it is grounded in substantial evidence. 42 U.S.C. 405(g); 1383(c)(3). Substantial evidence exists when there is sufficient evidence that a reasonable person could agree with the conclusion. *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir. 1981). Thus, this Court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion, even if the administrative record could

---

[3] Light work involves lifting and carrying 20 pounds occasionally and 10 pounds frequently. It also generally requires standing/walking at least 6 hours a day and sitting the remainder of the day. SSR 83-10 (1983 WL 31251).

3

support multiple conclusions." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quotation marks and citation omitted).

## Discussion

In his assessment, the ALJ acknowledged that Plaintiff's diabetes, neuropathy, and left shoulder pain severely limited his functions when he assessed Plaintiff's residual functional capacity (RFC) for light work (AR. 27-42). The relevant question is not whether Plaintiff was symptom-free, but whether his symptoms were persistent and severe enough to preclude all substantial gainful employment. The RFC "is the most you can still do despite your limitations." 20 C.F.R. 416.945(a)(1), The ALJ's RFC conclusion only needed to assess the necessary conditions for Plaintiff to work given his limitations.

*Treating Sources/ALJ's Interpretation of Medical Data*

Plaintiff first argues that the ALJ improperly discredited the medical opinion provided by his treating provider and failed to support his reasons for doing so. A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In the First Circuit, an opinion is "not entitled to greater weight merely because" it is provided by a "treating source." *Barrientos v. Sec'y of Health & Human Servs.*, 820 F.2d 1, 2-3 (1st Cir. 1987) (emphasis added); *see Arroyo v. Sec'y of HHS*, 932, F.2d 82, 89 (1st Cir. 1991) ("This Circuit does not require ALJ's to give greater weight to the opinions of treating physicians."). However, "even when an ALJ does provide reasons for discounting a treating source opinion, remand is proper if those reasons are 'unpersuasive' or 'significantly flawed.' " *Santana v. Colvin*, 2016 WL 7428223, at *3 (*quoting Johnson v. Astrue*, 597 F.3d 409,

4

411-12 (1st Cir. 2009)). According to agency policy, "the decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (emphasis added). Where an ALJ does not give controlling weight to a treating physician's opinion, he must determine how much weight to accord the opinion based on the following factors:  1) length of the treatment relationship and frequency of examination; 2) nature and extent of the treatment relationship; 3) how well supported the conclusion is by relevant evidence; 4) how consistent the opinion is with the record as a whole; [and] 5) how specialized the knowledge is of the treating physician. *Abubakar v. Astrue*, 2012 WL 957623, at *9 (D.Mass. 2012. The ALJ need not expressly discuss each factor but must give "good reasons" for the weight afforded to a treating source's medical opinion. *Bourinot v. Colvin*, 95 F. Supp. 3d 161, 177 (D. Mass. 2015) (citing 20 C.F.R. § 404.1527(c)(2)). The opinion of a treating physician need not be given controlling weight where the ALJ determines that it is inconsistent with the other substantial evidence in the case record. 20 C.F.R. 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion").

The opinion of a non-treating physician may satisfy the substantial evidence standard where an ALJ determines not to give controlling weight to a treating physician's opinion and it is clear that the non-treating examiner reviewed the claimant's medical findings with care. *See Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 431 (1st Cir. 1991) (affirming a non-treating doctor's medical opinion as substantial evidence); *Agrón-Bonilla v. Comm'r of Soc. Sec.*, 2009 WL 4670538, at *5 (D.P.R. Dec. 9, 2009) (affirming ALJ denial of benefits that relied

on opinions of non-treating state agency physicians). Ultimately, where the findings of a claimant's treating physician differ from those of other examining and non-examining sources, "it is the Secretary's responsibility to choose between conflicting evidence." See *Scott v. Saul*, 2021 WL 735851, at *4 (D. Mass. 2021), *quoting Burgos Lopez v. Sec'y of Health & Human Servs.*, 747 F. 2d 37, 41 (1st Cir. 1984).

Here, the ALJ found that Dr. Crook's opinions were inconsistent with other substantial evidence contained in the Plaintiff's record, including some of his own treatment records (AR. 35). The ALJ properly weighed Dr. Crooks' opinions, as he provided good reasons for giving the opinions little weight, and his finding is supported by substantial evidence.

On February 14, 2012, Dr. Crooks opined that Plaintiff could frequently and occasionally lift and/or carry less than 10 pounds, stand and/or walk for less than two hours in an eight-hour day, and sit for less than six hours in an eight-hour day (AR. 687- 688). Dr. Crooks also found that Plaintiff's ability to push/pull was limited in his upper extremity; he could occasionally climb, balance, kneel, and crouch; he could frequently reach but occasionally handle, finger, and feel; he was limited around hazards; and he could not move his shoulders or stoop or crawl (AR. 688-690). Dr. Crooks indicated that Plaintiff could sit and stand and/or walk for less than one hour each in an eight-hour day, and occasionally lift/carry up to 10 pounds (AR. 946). The doctor added that Plaintiff would miss work more than three times a month, he could frequently grasp, turn, and twist objects, use his hands/fingers for fine manipulation, and use his arms for reaching, and his limitations had existed since December 20, 2007 (AR. 946). On January 14, 2014, Dr. Crooks completed a Fracture Form, where he concluded that Plaintiff's major function had not been restored, and he used a handheld device and could not walk independently without it (AR. 943).

On December 14, 2015, Dr. Crooks opined that Plaintiff could sit and stand and/or walk for less than one hour each in an eight-hour day, he needed to avoid continuous sitting in an eight-hour day, he had get up every 20-30 minutes, and he could not lift or carry any amount of weight (AR. 1398-1402). The doctor also concluded that Plaintiff had no significant manipulative limitations, his symptoms would increase if he was placed in a competitive work environment, he would frequently experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration, and he needed unscheduled breaks every half hour for five to ten minutes (AR. 1401).

In addition, the evidence in the record supports the ALJ's finding that Dr. Crooks' opinions were not corroborated by the medical evidence, especially the multiple findings of normal gait – which contradict the doctor's conclusion that Plaintiff required a handheld device or cane to ambulate. The ALJ also found that the doctor's opinions overly credited Plaintiff's subjective complaints regarding the limiting effects of his condition and were inconsistent with Plaintiff's appearance at the hearing without a cane and his many appearances at appointments without a cane or other handheld device.

Finally, the ALJ noted that Dr. Crook's opinion was undermined by the Plaintiff's own reports of his ability to perform activities of daily living. Indeed, the ALJ, through a careful review of the record, specifically referenced each medical provider and treatment of the Plaintiff. The ALJ noted that when Plaintiff followed the prescribed course of treatment, attended appointments, pursued physical therapy and maintained a healthy lifestyle, he improved in gait, range of movement, blood sugar levels, and issues associated with diabetes.

Although opinions from treating and examining physicians may be considered helpful, and in many cases controlling, the ALJ is only required to make a decision that is supported by

7

substantial evidence. Therefore, if the ALJ comes to a conclusion contrary to that of the treating physician and alternatively adopts the opinion of a non-examining source, then this Court must uphold his decision as long as a "reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion." *See Roshi v. Commissioner of Social Security*, 2015 WL 6454798, at *9 (D.Mass. 2015). This remains true even if this Court, sitting as a trier of fact, would conceivably rule otherwise. *Monroe v. Barnhart*, 471 F.Supp.2d 203, 211 (D.Mass.2007) (internal citations omitted). Because the ALJ's treatment of Dr. Crook's opinions was supported by substantial evidence in the record, this court is not at liberty to disturb her decision on that issue. "The hearing officer is not required to—nor could he reasonably—discuss every piece of evidence in the record." *Sousa v. Astrue*, 783 F.Supp.2d 226, 234 (D.Mass. 2011); accord *Foster v. Colvin*, 2016 WL 3360574. *10, (D.Mass. 2016) (reasoning that an ALJ is not required to discuss every piece of relevant evidence provided that her conclusion is supported by substantial evidence) (citation omitted). Here, the ALJ stated that he had based his findings "on the record as a whole." *Roshi v. Comm'r of Soc. Sec.*, 2015 WL 6454798, at *10 (D. Mass. Oct. 26, 2015).

*ALJ's Evaluation of Plaintiff's Testimony*

Plaintiff also argues that the ALJ failed to properly evaluate his subjective complaints. Specifically, Plaintiff contends that the ALJ discredited his own statements relating to the intensity, persistence, and limiting effects of his symptoms. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the court must affirm the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez*, 647 F.2d at 222.

Social Security Ruling 96-7p explains how an ALJ must evaluate a claimant's credibility under the regulations. *See* SSR 96-7p, 1996 WL 374186. The Ruling requires an ALJ to consider a claimant's statements in light of the entire record, and to include in the decision specific reasons for the credibility findings that are supported by evidence. *Id*. at *2-4. Specifically, an adjudicator must consider the following factors when evaluating the nature and severity of a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 1529(c)(3); 416.929(c)(3); SSR 96-7p, 1996 WL 374186 at *3; *see also Avery v. Sec'y of Health & Human Servs*., 797 F.2d 19, 29 (1st Cir. 1986) (describing factors ALJs must consider in evaluating a claimant's subjective description of pain). In *Avery*, the First Circuit held that an ALJ must consider certain factors in making a determination about a claimant's subjective complaints about pain or other symptoms. *Avery*, 797 F.2d at 29. The relevance of the factors varies depending on a claimant's impairments and symptoms and the ALJ "need not expressly discuss every enumerated factor." *Balaguer v. Astrue*, 880 F. Supp. 2d 258, 268 (D. Mass. 2012). *Avery* is understood to require ALJs to consider the *Avery* factors at the hearing and in reaching their determination, but it does not require that the ALJ provide "an explicit written analysis of each factor." *See Vega v. Astrue*, 2012 WL 5989712, at *8 (D. Mass. 2012). Further, in a Social Security Disability case, "[a] fact-finder's assessment of a party's credibility ... is given

9

considerable deference and, accordingly a reviewing court will rarely disturb it." *Anderson v. Astrue*, 682 F. Supp. 2d 89, 96 (D.Mass. 2010); *see also Frustaglia v. Sec'y of Health and Human Servs*., 829 F.2d 192, 195 (1ˢᵗ Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.")

Here, substantial evidence supports the ALJ's decision that Plaintiff's subjective complaints were not sufficiently supported by the medical record. The ALJ did not reject Plaintiff's statements of pain; indeed, the ALJ found Plaintiff's osteoarthritis, Type 2 diabetes, and related neuropathy to be severe impairments. Instead, the ALJ questioned the limitations resulting from the pain. The ALJ concluded that Dr. Crook's findings conflicted with Plaintiff's everyday activities. *See Teixeira v. Astrue*, 755 F.Supp.2d 340, 347 (D. Mass. 2010) ("While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding."). The ALJ's conclusions are also supported by Plaintiff's self-reported capabilities: Plaintiff testified that he was able to perform light household tasks, drive a car, shop for groceries, attend his medical appointments and tend to his gardens and dogs.

In support of his conclusions, the ALJ found that while Plaintiff alleged limitations in walking and standing, the record demonstrated that he was usually able to walk with a normal gait without the assistance of a cane or other assistive device. The ALJ took note that in March 2016, Plaintiff presented to Dr. Crooks with an antalgic gait, but without an assistive device for ambulation. The following month, Dr. Frances Lagana recommended that Plaintiff wear an ambulatory boot, but he declined. The ALJ concluded that this evidence indicated that Plaintiff's pain and numbness in his legs and feet were not as intense, persistent, or limiting as he alleged.

The ALJ further determined that while Plaintiff had a bilateral shoulder condition, the record showed that injections were effective in treating and relieving his shoulder pain and allowed him greater range of motion without discomfort.

During two separate visits in 2015, Plaintiff informed Dr. Kaddouh that he spent a lot of time gardening, an activity involving many parts of the body, particularly arms, shoulders and knees. Plaintiff was discharged from physical therapy for his shoulders twice, due to abandonment of appointments, even though, he was improving, leaving the ALJ to surmise that Plaintiff's shoulder impairment was not as intense, persistent, or limiting as he alleged, especially when he received prescribed treatment for the condition. Because the Court finds that the ALJ's findings were supported by substantial evidence, the Commissioner's decision will be affirmed on the issue of the ALJ's evaluation of the medical opinion evidence.

The test here is to determine whether the Commissioners' decision was supported by substantial evidence. A claimant is not guaranteed disability benefits from the presence of an impairment; he must demonstrate an inability "to participate in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 309 (D.Mass. 1998) (citing 42 U.S.C. § 423(d)(1)(A) and 1382c (a)(3)(A)). The impairment also must be of such severity that the claimant is not only unable to perform her previous work but also, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id*. Accordingly, the Commissioner is entitled to judgment in his favor.

## **Conclusion**

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 16) is ***denied*** and Defendant's Motion for Summary Judgment affirming the decision of the Commissioner (Docket No. 18) is granted.

**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE
